IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-03350-RBJ-KLM

BRYAN A. LLOYD,

        Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

        Defendant.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

        This matter is before the Court on the **Social Security Administrative Record** [#9],

filed in support of Plaintiff's Complaint [#1] seeking review of the decision of Defendant, the

Commissioner of the Social Security Administration ("Defendant" or "Commissioner"),

denying Plaintiff's claim for disability insurance benefits.   Plaintiff filed an Opening Brief

[#15] on July 22, 2013.  Defendant filed a Response [#16] in opposition, and Plaintiff filed

a Reply [#17].  Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1C., the matter

has been referred to this Court for a recommendation regarding disposition.  The Court has

reviewed the entire case file and the applicable law and is sufficiently advised in the

premises.  For the reasons set forth below, the Court **RECOMMENDS** that the decision of

the Commissioner be **AFFIRMED**.

### I.  Background

        Plaintiff filed this action on December 27, 2012, pursuant to 42 U.S.C. § 405(g), for

judicial review of an unfavorable decision by the Commissioner with respect to Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act (the "Act").

Plaintiff has completed high school and four years of vocational college for trade school. Tr. 39.[1] He most recently worked for a friend's painting business for a couple of weeks in 2009. Tr. 40. Plaintiff initially claimed an onset of disability on July 2, 2005, but this was later amended to September 25, 2006. Tr. 77, 132. Plaintiff was born in 1951 and was fifty-five years old on the amended date of the alleged onset of disability. Tr. 133.

## A.   Medical History[2]

On May 31, 2006, Plaintiff was examined by Irene Rooney, NP (Nurse Practitioner) after having endured approximately two months of shortness of breath and coughing. Tr. 180. She found that Plaintiff had expiratory wheezing in all lung fields and assessed that he was suffering from asthma exacerbation. Tr. 180. Plaintiff was prescribed medications to reduce his symptoms. Tr. 180.

On July 11, 2006, Plaintiff was seen by Jeff McElwain, PA-C (Physician Assistant - Certified) ("Mr. McElwain"). Tr. 179. Plaintiff did not complain of significant shortness of breath at that time, and Mr. McElwain noted that Plaintiff's lungs were clear, although there were slight decreased breath sounds throughout and scattered wheeze. Tr. 179. Mr. McElwain had seen Plaintiff many times over the previous year and had placed Plaintiff on

---

[1] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 9, 9-1, 9-2, 9-3, 9-4, 9-5, 9-6, and 9-7, by the sequential page numbers instead of the separate docket numbers.

[2] Plaintiff has lost virtually all use of his left eye. However, the parties' arguments do not contend that the Commissioner's decision erred in any respect concerning Plaintiff's loss of vision. Because the analysis focuses on Plaintiff's breathing issue, the medical history as follows also focuses on that impairment.

antibiotics, without total resolution of Plaintiff's symptoms from his asthma and/or chronic obstructive pulmonary disease ("COPD").  Tr. 179.  Mr. McElwain recommended that Plaintiff use two medications, Duo-Neb (to assist with breathing) and Albuterol, on a regular basis.  Tr. 179.  On July 31, 2006, Plaintiff returned, again complaining of the cough that had lasted the previous two months.  Tr. 178.

On October 31, 2006, Plaintiff saw a pulmonologist, J. Allen Washburn, M.D., and underwent pulmonary function testing ("PFT"), with the following results: "Moderate obstructive lung disease with post bronchodilator reversibility and airtrapping on lung volumes, diffusion was normal, and [arterial blood gas ("ABG")] was normal."  Tr. 144.  Plaintiff was again diagnosed with COPD and was encouraged to engage in "regular activity to maintain his overall level of conditioning and health."  Tr. 145.

On September 17, 2009, Plaintiff was examined by Eugene P. Toner, M.D. ("Dr. Toner"), a consultative examiner.  Tr. 223.  Dr. Toner observed that lungs showed "almost absent breath sounds bilaterally and no rales or rhonchi could be appreciated."  Tr. 224.  Dr. Toner concluded that:

> This claimant's pulmonary function apparently interferes with his ability to do much in the way of any exertional work.  He is unable to climb stairs.  He states he can lift 50 pounds but, again, I feel that this is something that he could [not] do more than once.  I also feel like his walking is restricted to perhaps ten minutes at a time for a total of an hour a day.

Tr. 225.  Dr. Toner assessed Plaintiff as having COPD with exertional dyspnea, i.e., shortness of breath.  Tr. 225.

Less than a month later, on October 15, 2009, Plaintiff was seen by Michael Canham, M.D. ("Dr. Canham"), a State agency medical consultant with a specialization in pulmonology.  Tr. 234.  In assessing Plaintiff's residual functional capacity ("RFC"), Dr.

-3-

Canham cited the following evidence:

> The [claimant] is a 58 yo man who lives at high altitude, at 6,900 ft. He alleges COPD and left eye blindness. He alleges onset in July 2005. He is 72 inches tall, 180 lbs. BMI of 24. His records date back to July 2006 at which time he had an oxygen saturation of 91% at an altitude of greater than 6000 ft. He also underwent PFTs in Oct 2006. His FEV1 was 2.42 liters. His [diffusing capacity of the lung for carbon monoxide ("$D_{LCO}$")] was 72%. The FEV1 is not severe. The $D_{LCO}$ would suggest that he does not have significant exercise oxygen dissociation. This also was confirmed in October 2006, that his oxygen saturation at rest is 98%, with walking it dropped to 93%. That would not qualify for continuous supplemental oxygen or oxygen with exertion. ABGs at that time, at an altitude of greater than 6000 ft were entirely normal. His PCO2 was 39, his pO2 was 74. He then underwent an exam in September 2009 by Dr. Eugene Toner. At the CE he told Dr. Toner that he was capable of short amounts of yard work. He states that he could walk 200 yds and lift 50 lbs. Dr. Toner's exam revealed some diminished breath sounds. He felt that the [claimant] was unlimited in sitting, but that walking should be only 1 hr per day, but that he could also lift 50 lbs. He underwent PFTs in September 2009, his FEV1 was 2.77 which would be a not severe impairment by SSA, but a moderate obstructive defect. Consequently all of these factors are considered in the reduction of this RFC. This RFC does not specifically address his blindness and this will be evaluated by ophthalmology. Nevertheless, the physiologic data demonstrates the ability to do this RFC.

Tr. 229. Based on these considerations, Dr. Canham averred that Plaintiff could occasionally lift and/or carry fifty pounds; frequently lift and/or carry twenty-five pounds; stand and/or walk with normal breaks for about six hours in an eight-hour workday; sit with normal breaks about six hours in an eight-hour workday, and push and/or pull without limitation. Tr. 228.

Dr. Canham specifically noted that he did not believe that Dr. Toner's conclusions were supported by the evidence, because Dr. Toner's report did not address Plaintiff's normal gas exchange, his not-severe spirometry, or the fact that Plaintiff works at a very high elevation of 6,900 feet, which Dr. Canham opined accounted for some of Plaintiff's respiratory symptoms instead of COPD. Tr. 233. Dr. Canham further noted that he gave

the greatest evidentiary weight to the physiology reports and to Plaintiff's own comments about being able to walk two hundred yards and lift fifty pounds.  Tr. 232.

## B.  Application to the Social Security Administration

On May 12, 2009, Plaintiff filed an application for disability insurance benefits. Plaintiff claimed inability to work since his alleged onset date of July 2, 2005, due to COPD and blindness in his left eye.  Tr. 77, 90.  In a disability report that Plaintiff completed around the time of his application, Plaintiff reported that he had trouble breathing and could not do the work he had done all of his life.  Tr. 99.  He said that he had had surgery on his good eye but that returning to grinding metal would risk the sight in the one eye which he could still use.  Tr. 99.  He said that his conditions did not cause him pain or other symptoms. Tr. 99. He stated that since his alleged onset date of disability, he had helped an outfitter for a couple of weeks, but that he had to ride horseback since he could not climb hills because of his breathing problems.  Tr. 99.  The job was a temporary one that lasted only during a certain hunting season. Tr. 99.  As a life-long sheet metal journeyman, Plaintiff installed air conditioning and heating.  Tr. 100.  At that job, he would lift duct work and equipment of up to one hundred pounds several times a day and would have to carry these items up to twenty feet at a time.  Tr. 100.

Plaintiff also stated that he worked as much as possible around the house and property and that he took medicine when he woke up and before he went to bed.  Tr. 108. He continued to care for his horses and provide them with hay in the winter time.  Tr. 109. He said that his alleged disabilities did not affect his ability to dress, bathe, care for his hair, feed himself, or use the toilet.  Tr. 109.  Plaintiff stated that he had to take breaks because of his breathing and that it took him longer to complete tasks.  Tr. 113.  He also reported

taking five medications: three to help with his breathing, one to prevent infection in his left eye, and one to prevent heartburn and acid reflux symptoms.  Tr. 125.

The Commissioner denied Plaintiff's application at the initial level.  Tr. 49.  Plaintiff thereafter requested a hearing before an administrative law judge (the "ALJ") of the Social Security Administration (the "SSA").  Tr. 52.  The ALJ granted Plaintiff's request and conducted a hearing on June 15, 2011.  Tr. 60.

## C.    The ALJ Hearing

Plaintiff and Reva D. Payne, an impartial vocational expert (the "VE"), testified at the hearing.  Tr. 35.  The ALJ first questioned Plaintiff.  Tr. 35-46.  Plaintiff testified that he had last worked in 2009 for "a couple of weeks" helping a friend with his painting business.  Tr. 39.  Since he quit working full time, he supported himself with money he obtained in a malpractice suit against Mercy Medical Center for the loss of vision in his left eye.  Tr. 39. Plaintiff testified that, at best, he could perceive light with his left eye.  Tr. 39.  Plaintiff also had breathing difficulties, i.e., COPD, but he was not using supplemental oxygen.  Tr. 40. He testified that his only medication at that time for his COPD was an "Advair disc" and a Provenil inhaler.  Tr. 40.  From one of these he took two puffs four times a day, and from the other he took one puff twice a day.  Tr. 41.  Exertion was the main cause of his loss of breath.  Tr. 41.  Plaintiff testified that after 20-30 minutes of heavy lifting or exerting work, he would have to sit and rest for 5-10 minutes.  Tr. 41.

The ALJ next questioned the VE.  Tr. 44-46.  Having reviewed the record, the VE categorized Plaintiff's prior work as a "sheet metal journeyman," which was performed by Plaintiff at a heavy duty level.  Tr. 45.   The ALJ then asked the VE about the vocational opportunities for a hypothetical person with the same age and educational background as

Plaintiff who could perform work at a medium exertional level with nonexertional limitations of monocular vision and minimal exposure to dust, smoke, and chemicals. Tr. 45. The VE responded that a person with these abilities and limitations could perform the work of a change person, a dining room attendant, or a sandwich maker, but not the work of Plaintiff's past job as a sheet metal journeyman. Tr. 45 The VE opined that this same hypothetical person, if also limited to staying on task for about thirty minutes before needing a ten-minute break, would not be tolerated in a competitive working environment. Tr. 46.

## D.  The Commissioner's Decision

On August 1, 2011, the ALJ issued an unfavorable decision.[3] Tr. 7. The ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") during the relevant period and that he had two severe impairments: COPD and blindness in the left eye. Tr. 12. The ALJ specifically noted that Plaintiff's remaining alleged impairments (prostate cancer and arterial fibrillation) were not severe. Tr. 12-13. The ALJ next found that Plaintiff's severe impairments, individually or in combination, did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").

Regarding Plaintiff's residual functional capacity ("RFC") to perform work-related activities, the ALJ considered the entire record and found that Plaintiff was capable of medium work, as defined in 20 C.F.R. §§ 404.1567(c), with the following limitations: (1) Plaintiff should avoid exposure to extremes of cold and hot and hazardous work areas; (2) he should have only minimal contact with dust, smoke, and chemicals; and (3) he should

---

[3] For an explanation of the five-step process used by the ALJ, see Section II.A. below.

not perform work requiring binocular vision.  Tr. 13.  Finally, relying on the VE's testimony, the ALJ found that Plaintiff could not perform any past relevant work but could perform jobs that exist in significant numbers in the national economy, such as a change person, a dining room attendant, and a sandwich maker.  Tr. 17-18.  Thus, the ALJ found that Plaintiff was not under a disability during the relevant period.  Tr. 18.

Plaintiff appealed the ALJ's decision.  Tr. 31-32.  The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision into the final decision of the Commissioner.  Tr. 1-6.  Plaintiff then timely sought judicial review of the decision by the Court.  *See Compl.* [#1].

## II.  Standard of Review and Applicable Law

Pursuant to the Social Security Act:

> [T]he [SSA] is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)).  The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings.  42 U.S.C. § 423(d)(3), (d)(5)(A).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)).  In other words, the Court does not reexamine the issues *de novo*.  *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993).  Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo*."  *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

## A.    Legal Standard

The SSA uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits.  *See* 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent steps is unnecessary.  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.").  The Commissioner bears the burden of proof at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity."  *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d

1140, 1142 (10th Cir. 2004)).  If not, the ALJ then considers, at step two, whether a claimant has "a medically severe impairment or impairments."  *Id.*  "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities."  *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521).  Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings."  *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142).  "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work."  *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142).  "Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient residual functional capability to perform other work in the national economy."  *Id.*

## B.    Substantial Evidence

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled.  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  However, the ALJ need not specifically "reference everything in the administrative record."  *Wilson*, 602 F.3d at 1148.  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1140 (internal quotation marks omitted).  "It requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the

record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v.
Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

### III.  Analysis

Plaintiff requests judicial review of the ALJ's decision denying disability benefits.

Specifically, Plaintiff argues that the ALJ erred: (1) by failing to properly evaluate Plaintiff's

credibility at step four; (2) by failing to give full weight to Dr. Toner's medical opinion and,

conversely, by giving too much weight to Dr. Canham's medical opinion at step four; and

(3) by failing to properly assess Plaintiff's overall RFC at step four. *Brief* [#15] at 21.   The

Court first discusses Plaintiff's objections to the ALJ's credibility assessment.

### A.      Step Four: The ALJ's Assessment of Plaintiff's Credibility

The ALJ ultimately concluded that Plaintiff's statements concerning the "intensity,

persistence and limiting effects" of his symptoms were less than fully credible.   Tr. 15.

Plaintiff argues that the ALJ failed to conduct a proper credibility analysis in making this

finding.  *Brief* [#15] at 26-30.  The Court therefore addresses whether there was substantial

evidence supporting the ALJ's decision to discount Plaintiff's assertion of total disability.

"Credibility determinations are peculiarly the province of the finder of fact, and we

will not upset such determinations when supported by substantial evidence."   *Hackett v.
Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quoting *Kepler v. Chater*, 68 F.3d 387, 391

(10th Cir. 1995)).   "However, 'findings as to credibility should be closely and affirmatively

linked to substantial evidence and not just a conclusion in the guise of findings.'"  *Hackett*,

395 F.3d at 1173 (quoting *Kepler*, 68 F.3d at 391 (brackets omitted)).   The ALJ need not

make a "formalistic factor-by-factor recitation of the evidence[,]" but he must set "forth the

specific evidence he relies on in evaluating the claimant's credibility." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *Williams [ex rel.] Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir. 1988) (stating that "failure to make credibility findings regarding . . . critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support his conclusion that claimant is not under a disability")).

### 1. Objective Medical Evidence

"Objective evidence 'is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of' an individual's symptoms and the effects those symptoms may have on the individual's ability to function." SSR 96–7p, 1996 WL 374186, at *6 (quoting 20 C.F.R. § 416.929(c)(2)). "When present, these [medical] findings tend to lend credibility to an individual's allegations about pain or other symptoms and their functional effects." SSR 96–7p, 1996 WL 374186, at *6. Further, "[t]he absence of an objective medical basis which supports the degree of severity of subjective complaints is just one factor to be considered in evaluating the credibility of the testimony and complaints." *Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987) (internal citations omitted).

The ALJ explained his findings regarding Plaintiff's medical history and its connection to Plaintiff's credibility in great detail. Tr. 15-16. For example, citing the record, the ALJ noted that in 2006 Plaintiff had an oxygen saturation of 91% at an altitude greater than 6000 feet; that in late 2006 Plaintiff's PFT revealed a $D_{LCO}$ of 72%, suggesting that Plaintiff did not have significant exercise oxygen dissociation; that Plaintiff's oxygen saturation at rest was 98% and while walking at 93%; that these numbers would not qualify Plaintiff for supplemental oxygen at rest or with exertion; and that Plaintiffs ABGs at an altitude of greater than 6000 feet were normal. Tr. 15. These objective medical findings

may properly be used to assess Plaintiff's credibility regarding his assertion of total disability. *Luna*, 834 F.2d at 165.

Plaintiff's argument appears to miss the point of the ALJ's discussion. *Brief* [#15] at 27-29. While Plaintiff argues that these medical findings support Plaintiff's assertions of impairment and inability to work, the ALJ instead used these findings to discount Plaintiff's credibility regarding the limiting effect of his conditions, not to make a finding that his impairments, such as they were, could not be used to support any ultimate determination of Plaintiff's disability. The evidence cited by the ALJ, especially when made in connection with Plaintiff's daily activities, as outlined below, undermines Plaintiff's claim that he experiences disabling impairments. *See Wilson*, 602 F.3d at 1146.

### 2.    Effectiveness of Medication

An ALJ should consider the effectiveness of treatment in assessing credibility. 20 C.F.R. §§ 404.1529(c)(3)(iv); *White v. Barnhart*, 287 F.3d 903, 909-10 (10th Cir. 2002) (affirming that the claimant's admission that medication relieved some of her pain supported finding that her impairments were not disabling). Here, the ALJ noted that Plaintiff's history of treatment has been "generally successful in controlling" his COPD symptoms. Tr. 15. The medical records and Plaintiff's testimony at the hearing support the ALJ's findings that medication was effective in alleviating his breathing condition. *See, e.g.*, Tr. 40-41, 145. Given this substantial evidence, it was reasonable for the ALJ to question Plaintiff's claim of total disability. Plaintiff's reasoning would require the Court to reweigh the evidence or substitute its judgment for that of the ALJ and the Commissioner, which the Court unquestionably cannot do. *Hackett*, 395 F.3d at 1173; *White*, 287 F.3d at 905, 908, 909. Here, the Court finds that the conclusions reached by the ALJ regarding the

effectiveness of Plaintiff's treatments are reasonable and consistent with the evidence. *See Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994) (holding that the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).

### 3.    Daily Activities

Evidence that a claimant engages in limited daily activities does not establish that the claimant has an ability to work. *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988); *Hamlin v. Barnhart*, 265 F.3d 1208, 1220-21 (10th Cir. 2004).   However, this type of evidence may be considered along with other evidence in determining whether the claimant is entitled to disability benefits. *Gossett*, 862 F.2d at 807.

The ALJ found that Plaintiff's admissions regarding his daily activities were inconsistent with his claim of disabling impairments.  Tr. 16.  The ALJ noted that Plaintiff could attend to his personal care needs, clean the house, vacuum, mow the grass, care for his horses, do his laundry, prepare and cook his meals, do his dishes, and go shopping. Tr. 16.  Plaintiff also stated that he could read, watch television, visit with friends, and manage his personal finances.  Tr. 16.  The Court finds that these daily activities provided the ALJ with a valid reason to question Plaintiff's credibility regarding his claim of total disability.  *Wilson*, 602 F.3d at 1146 (finding the ALJ reasonably found a claimant's description of her daily activities did not indicate disabling limitations, where, among other things, the claimant could handle finances, garden, visit friends, and go out to eat); *see Rager v. Astrue*, No. 3:11cv00310, 2012 WL 3030251, at *9 (S.D. Ohio July 25, 2012) (upholding the ALJ's finding that Plaintiff's allegations were not credible where Plaintiff was able to drive and take care of her personal needs; performed a variety of household chores,

including cooking and doing laundry; took care of her dog; went shopping with her partner; and where "the record also showed that Plaintiff continues to play the computer role-playing game 'World of Warcraft' for approximately 4 hours daily").  Finally, to the extent that the ALJ's statement that "the claimant's work history is [weak] with sporadic and inconsistent jobs" may not be supported by the record, the Court notes that an ALJ's error in relying on an invalid reason is harmless where the ALJ identifies other valid reasons for his finding, as he does here.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The Court finds that the ALJ appropriately utilized Plaintiff's daily activities in the evaluation of his alleged disability because the ALJ also relied on other evidence in making his overall credibility determination, such as the objective medical evidence and effectiveness of treatments discussed above.  *See Patterson v. Apfel*, 62 F. Supp. 2d 1212, 1218 (D. Kan. 1999) (holding that an ALJ must consider and weigh multiple factors in combination when evaluating a claimant's credibility).  Because the ALJ's credibility determination is supported by substantial evidence, it must be upheld.  *Casias v. Sec. of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Based on the foregoing, the Court therefore finds that the ALJ sufficiently linked his evaluation of Plaintiff's credibility to substantial evidence in the record and that the ALJ satisfied the analysis required by *Kelper*.  The ALJ offered several reasons for his conclusion and identified parts of the evidence that indicate that Plaintiff's disability was not as severe as he asserted.  The law in this Circuit "does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied."  *Qualls*, 206 F.3d at 1372.  The Court finds that the ALJ has properly done so

here.

**B.    Step Four: Standards for Weighing Medical Opinions**

Plaintiff argues that the ALJ erred by failing to properly evaluate the medical opinions of Dr. Toner and Dr. Canham. *Brief* [#15] at 23-26. Specifically, Plaintiff argues that the ALJ erred by giving too little weight to the opinion of Dr. Toner and too much weight to the opinion of Dr. Canham. *Id.* at 23.

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ and the Commissioner. *Hackett*, 395 F.3d at 1173; *White*, 287 F.3d at 905, 908, 909. However, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. *See Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994) (the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)).

Treating physicians' opinions are generally given controlling weight. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Here, however, the ALJ noted that "the file does not contain a medical source statement from a treating physician," and thus, although the ALJ "traditionally give[s] great deference and weight to the opinions of the treating physician," he could not do so in this case. Tr. 16. Neither party contests this finding. However, regarding the other physicians, even when a medical opinion is not given controlling weight, such an opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 . . . ." *Watkins*, 350 F.3d at 1300. Those

factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301; 20 C.F.R. §§ 404.1527(d)(2-6); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing *Goatcher v. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)). Although the above factors are to be considered in weighing medical opinions, the Court does not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham*, 509 F.3d at 1258 (quoting *Watkins*, 350 F.3d at 1300). "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." *Id.* (citing *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (quoting *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987)).

First, the Court notes that the ALJ did not reject any physician's opinion completely. Tr. 15-16. Second, the ALJ was convinced by the opinion of Dr. Canham that Dr. Toner's opinion was not supported by the evidence, as Dr. Toner did "not address the claimant's normal gas exchange, non severe spirometry, or the fact that he is working at a very high elevation of 6,900 ft which also accounts for some respiratory symptoms and not necessarily cardiopulmonary disease." Tr. 16 (citing Tr. 233).

Third, the ALJ gave more weight to some parts of Dr. Toner's opinion and less

weight to other parts.  *Compare* Tr. 15 *with* Tr. 16.  The ALJ specifically stated why he gave

little weight to some of Dr. Toner's opinion: "The opinion was inconsistent with the evidence

of record, as the PFT's were mostly normal and the claimant does not require supplemental

oxygen . . . ."  Tr. 16.  The ALJ found that parts of Dr. Toner's report were inconsistent with

the functioning and minimal treatment cited elsewhere in Plaintiff's medical history.  Tr. 16.

Assessing a medical opinion's consistency is a relevant consideration when deciding what

weight to accord an opinion.  *See Watkins*, 350 F.3d at 1301; *see also White*, 287 F.3d at

907-08 ("[W]e agree with the district court that [the ALJ] set forth specific and legitimate

reasons for discounting the doctor's opinion. [The ALJ] noted first the discrepancy between

Dr. Fanning's very restrictive functional assessment and her contemporaneous examination

of Ms. White . . . .  The ALJ also contrasted the detailed nature of examinations performed

by at least one of the consulting doctors with that of Dr. Fanning."); 20 C.F.R. §§

404.1527(d); SSR 06-03p, 2006 WL 2329939, at *5.  Here, the ALJ also found that Dr.

Toner's opinions were "inconsistent" with the rest of Plaintiff's record, such as whether

Plaintiff could walk more than an hour in an eight-hour workday, whether Plaintiff could

climb stairs, and the degree of his lung functioning.  Tr. 17, 113, 144, 145, 232; *see* 20

C.F.R. §§ 404.1527(c)(4) (stating an ALJ must consider whether an opinion is consistent

with the record as a whole).  Therefore, the Court finds that substantial record evidence

supports the ALJ's determination on inconsistency between Dr. Toner's opinion and other

portions of the record.   The ALJ's rejection of one physician's opinion based on

contradictory medical evidence is permissible.  *See McGoffin v. Barnhart*, 288 F.3d 1248,

1252 (10th Cir. 2002).

The ALJ need not "apply expressly" all the relevant factors when determining the

weight of a medical opinion, *see Oldham*, 509 F.3d at 1258-5, nor must he formulaically lay out a detailed analysis of each factor, *see Qualls*, 206 F.3d at 1372.   Here, the ALJ's decision was "sufficiently specific to make clear to any subsequent reviewers the weight he gave to the . . . medical opinion and the reasons for that weight."  *Watkins*, 350 F.3d at 1300 (citing SSR 96-2p).   Accordingly, Plaintiff has shown no error in the ALJ's evaluation of the medical opinions.

**C.     Step Four: The ALJ's Assessment of Plaintiff's RFC**

Plaintiff also argues that the ALJ failed to properly assess Plaintiff's RFC.  *Brief* [#15] at 21-23.   Plaintiff points to three specific errors: (1) that the ALJ failed to perform a function-by-function assessment of the seven strength demands; (2) that the ALJ relied on the opinion of the non-examining consultative physician, Dr. Canham; and (3) that the ALJ erred with respect to his findings on Plaintiff's credibility and subjective complaints.  *Id.* at 22-23.  The Court has already addressed the second and third arguments above and found that the ALJ did not commit error on those points.   The Court need not revisit those arguments here and thus proceeds to examine Plaintiff's argument regarding the ALJ's functional assessment.

Plaintiff is correct that an ALJ must consider whether a claimant has the capacity to perform each of seven functions in making his determination as to an individual's work capacity.  *See* SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996).  The seven functions are sitting, standing, walking, lifting, carrying, pushing, and pulling.  *Id.*  Plaintiff is also correct that the ALJ did not explicitly make a finding regarding Plaintiff's ability to push and pull. However, "[w]e may excuse the lack of an express finding if 'we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved

the factual matter [in favor of the claimant].'" *Bledsoe ex rel. J.D.B. v. Colvin*, __ F. App'x __, __, 2013 WL 6038288, at *2 (10th Cir. Nov. 15, 2013) (quoting *Allen*, 357 F.3d at 1145). The Court finds that this standard has been met here.

First, the ALJ cited heavily from Dr. Canham's written report regarding Plaintiff's functional capacity in which Dr. Canham opined that Plaintiff was unlimited in his ability to push and pull.  Tr. 16, 228.  The ALJ was thus obviously aware of Dr. Canham's opinion on this issue.  Second, and most importantly, Plaintiff points to no part of the record, and the Court finds none, where there is any indication that Plaintiff has any limitation in his ability to push or pull.  Even Dr. Toner's medical opinion, which Plaintiff argues was afforded too little weight, states that Plaintiff's shoulders, elbows, and wrists have a full range of motion and that Plaintiff's hands have good grip, pinch, and oppositional strength. Tr. 225.  Without evidence in the record indicating that Plaintiff was limited in these functions, there is nothing for the Court to remand back to the ALJ for his reconsideration of Plaintiff's RFC.  *See Wilson v. Colvin*, __ F. App'x __, __, 2013 WL 5630925, at *4 (10th Cir. Oct. 16, 2013) (remanding where the ALJ had not explained whether he considered certain opinion evidence in the record).  Accordingly, the Court finds that Plaintiff's argument regarding the ALJ's assessment of Plaintiff's RFC must fail.

## IV.  Conclusion

The record contains substantial evidence from which the ALJ concluded that Plaintiff was not disabled within the meaning of the Act during the time relevant to this case.  The ALJ's decision was based upon substantial evidence and is free of reversible legal error. Accordingly,

IT IS HEREBY **RECOMMENDED** that the decision of the Commissioner be

**AFFIRMED**.

IT IS FURTHER **RECOMMENDED** that each party bear its own costs and attorney's fees.

IT IS HEREBY **ORDERED** that, pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.   *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  December 12, 2013

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge